## JULIA A. FOSTER *versus* SYLVESTER GORDON.

If an execution creditor quitclaim to a third person, lands which have been levied on, before the time for the redemption from the levy has expired, the widow of the creditor will not be entitled to dower therein.

ON REPORT from *Nisi Prius*, by APPLETON, J.

THE plaintiff demands DOWER, as the widow of Samuel J. Foster, in certain premises in Hampden. The tenant denies that her husband was ever so seized of the estate as to entitle her to dower therein.

It was admitted that the fee of the premises was in one *John Brown*, on the third day of November, A. D. 1838, on which day, an execution against him, in favor of said Samuel J. Foster, and Ephraim Lincoln, and Benjamin Brown, was levied upon the premises, and the same were set off to the said creditors, who, on the 16th day of the same month conveyed the estate, by quitclaim deed, with special warranty, to Barker & Weeks, under whom, through sundry mesne conveyances, the tenant now holds the premises.

In the deed from Foster and others, to Barker & Weeks, after giving the boundaries of the premises, they add, "being the same set off to us on execution against John Brown, on the third day of the present month, as will appear by the return on the execution."

*J. Granger* for the plaintiff.

The tenant claiming and holding the estate through the demandant's husband, is estopped to deny his seizin. *Kimball* v. *Kimball*, 2 Greenl., 226; *Bancroft* v. *White*, 1 Caines, 185; *Hitchcock* v. *Carpenter*, 9 Johns., 344; *Smith* v. *Ingalls*, 13 Maine, 284; *Nason* v. *Allen*, 6 Greenl., 214; *Hains* v *Gardner*, 1 Fairf., 383, and would have been estopped even if there were an outstanding paramount title unless tenant had been evicted. 17 Wend., 164. When the widow's husband had nothing but a tenancy at will or

for years, it was held the tenant was estopped, as he held under the title conveyed by the widow's husband.  *Ib.*

If one enters by wrong and occupies five years, and conveys and dies, if the tenant holds under that title, he is estopped to deny demandant's seizin.

The title became absolute and indefeasible in the grantees of Foster after his conveyance, if not before in Foster.

*A. H. Briggs* for the tenant.

The title of a mortgagee is made void by payment of the mortgage debt; 18 Maine, 170; 6 N. H., 12; 8 Ver., 164. So, where the title is by a levy of execution, if the debtor pay the debt, &c., before the time of redemption has expired.  Nothing passed by the deed of the execution creditors to Barker & Weeks, but the right to have title in one year, if the debt was not paid.  Undoubtedly, if the time for redemption had elapsed before Foster and others conveyed to Barker & Weeks, and the tenant claimed under that title, he would be estopped from denying the title, and the plaintiff would be entitled to recover dower.  But to the case at bar, the rule of estoppel is not applicable.  It is clearly distinguishable from the case of *Kimball* v. *Kimball*, 2 Greenl., 226, in which the title of the husband was absolute ; the tenant derived title from him, with covenants of warranty — not a mere release of a right to have title, which depended on a contingency.  See 43 Maine, 489, also 34 Maine, 135 ; 29 Maine, 266 ; 36 Maine, 86.

The opinion of the Court was drawn up by

KENT, J. — This case, in many of its features resembles that of same *plaintiff* v. *Dwinel*, (*ante*, p. 44,) decided at this term. The only question presented, is upon the seizin of the husband.  The facts are agreed upon.  As in the other case above named, the tenants hold by mesne conveyances, under quitclaim deed from the husband.  They, however, contend that the husband never had a dowable seizin.  The question we consider open to proof, for the reasons stated

in *Foster* v. *Dwinel.* The only right or title that the husband ever had, was derived from a levy of an execution in his favor on the premises, on the third day of November, 1838. The quitclaim deed from the husband was dated the sixteenth day of the same month, but not acknowledged until the eighteenth of March, 1839. In this deed, as in the one in the former case, the nature and extent of the husband's seizin, and the nature and origin of his title are set forth. The language is—"and is the same set off to us on an execution against the said John Brown, on the third day of the present month, as will appear by the return on said execution." The question thus open for decision, therefore, is, whether the seizin of the husband, by virtue of a levy of an execution on the land, before the expiration of the year of redemption, is such as to entitle his wife to dower. It appears, that, within the year allowed for redemption, the husband parted with all his right and title by deed; and, of course, he never had any of the rights which would accrue from a perfected title by the expiration of the year of redemption.

What is the nature of the seizin which the husband had? He acquired it by a levy, under a statute, on an execution for a debt due to him. All the right and title he acquired, was subject to the right of the debtor to redeem and re-invest himself of his former estate, by paying the appraisement and interest and cost within the year. The real estate was thus taken and held as a pledge or security, or as a mortgage for the debt.

By the strict principles of the common law of England, following out the feudal doctrine of inalienability, real estate could not be levied upon, or sold for payment of debts. The first attempt to obtain some rights in land by creditors in England, was by a writ of execution, wherein the sheriff was commanded to seize and receive all the rents and profits, but not to take actual possession. Then followed the writ of *elegit,* given by statute, Westm., 2, 13; Edw., 1; by which one-half of the debtor's freehold lands are to be de-

livered to the creditor on the execution, to be held by him, until the debt is paid out of rents and profits. Recently this right has been extended to the whole of debtor's land, instead of a half; and a registration of judgment liens is provided for. 1 & 2 Vict. It is evident that the land is held only to secure payment of the debt.

It has been decided " that, although the estates acquired by a tenant by statute merchant, statute staple or *elegit,* are uncertain as to their duration, and, although persons holding such estates shall have the same remedy by assize as *freeholders,* yet they *are but chattels,* which vest in executors and administrators." Cruise's Digest, (Greenleaf,) Title xiv. § 65.

The provisions in our statute in relation to levies on real estate to satisfy executions, partake, to some extent, of the nature of the writ of *elegit,* in those provisions which authorize a levy on rents and profits. R. S., c. 76, §§ 8, 9, 10. But, in ordinary cases, where the estate can be described by metes and bounds, the estate of the debtor is taken by appraisement, and the creditor has seizin and right of possession from the day of the levy completed. *Pope* v. *Cutler,* 22 Maine, 105. This is subject to the right in the debtor to redeem by paying the appraisement and cost, and interest, within a year.

The question arises as to the nature of the creditor's seizin during the year of redemption, or until redemption within the year. The whole proceedings are instituted to obtain payment of a debt. As, in the case of a mortgage, the debt is the principal thing. Whatever discharges the debt, discharges the mortgage, and whoever holds the mortgage holds it in trust for all interested in the debt or debts thereby secured. The creditor takes the land by levy, and holds it, like a pledge, for the year. His title is not absolute and forever, but liable to be entirely defeated by payment. The levy creates a kind of statute mortgage, the time of redemption being limited to one year.

If the creditor dies within the year, and before redemp-

tion, and the land is redeemed, the money received goes to the administrator and not to the heirs of the real estate. And, even if not redeemed, the land is to be distributed among those entitled to the personal estate. R. S., c. 65, §§ 23, 24. Our law treats the land, even after the title becomes perfect by failure to redeem, as still representing the debt, and decrees its distribution as, in effect, still personal estate.

It has been decided in numerous cases, that a mortgagee, before foreclosure absolute, has no such estate as can be attached or levied on. *Smith* v. *People's Bank*, 24 Maine, 185. He has not an estate that his widow can have dower in. *Foster* v. *Dwinel*, *supra*.

It has been decided, also, that payment after the time of redemption, accepted by mortgagee, operates as an extinguishment of the title. And this doctrine has been applied to the case of a title under a levy of execution. *Randall* v. *Farnham*, 36 Maine, 86.

If the seizin of a creditor, who has levied, is sufficient to give his wife a right of dower in the land levied on, this right attaches at the time of the perfected levy, and any seizin, however short, if it be of a nature to give dower, is sufficient. It can, in this view, make no difference whether the land is redeemed or not. If the land is redeemed in a week after the levy, still the seizin is the same as if redeemed just before the expiration of the year. The widow of every creditor who has ever levied on the land will be entitled to dower, although the debtor has redeemed his land after each levy. It is evident that neither the common law nor the statute, ever contemplated such a right of dower. The statute makes no provision for a release of dower, when the land is redeemed, and it is not probable that any debtor, thus redeeming and taking a release, has in practice obtained such release of dower. The law does not contemplate or require that the debtor shall not only pay the appraisement, interest and cost, in order to re-possess himself of his land, but shall also pay whatever the wife of his creditor

may require for her inchoate right, or leave a newly created right of dower in his land as a perpetual incumbrance. We have known instances, where an energetic but unfortunate debtor has had the same land taken from him several times, by different creditors, and yet, in each case, has been, enabled, before the expiration of the year, to redeem it, and finally was so fortunate in his affairs, as to hold it without fear of creditors. He would, however, have but little cause to rejoice, if all the widows of the several creditors could each in turn have a third part set off to them as dower. It would be as when "seven women lay hold of one man."

We are satisfied that the seizin of the husband was not such as to give his wife a right of dower in the premises demanded, and, according to the agreement of the parties, the                             *Plaintiff must be nonsuit.*

TENNEY, C. J., APPLETON, CUTTING and MAY, JJ., concurred.